IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE IRWIN,<br><br>                    Plaintiff,<br><br>v.<br><br>CELEBRITY CRUISES, INC., et al.,<br><br>                    Defendants. | CIVIL ACTION<br>NO. 12-4385 |

## OPINION

**Slomsky, J.**                                                                                                      April 2, 2013

### I.     INTRODUCTION

Plaintiff Denise Irwin ("Plaintiff") purchased a ticket through a travel agent to take a cruise on a ship operated by Defendants Royal Celebrity Cruises, Inc., Royal Celebrity Tours, Inc., Caribbean Cruises, Inc., and Azamara Cruises (collectively "Defendants"). (Doc. No. 1 at 4.) As part of the boarding process, she signed a boarding pass called an "Xpress pass" and certified the following:

> **Cruise Ticket Contract**
> I, Denise Irwin certify that I am over 18 years of age, and that during the online check-in-process, I read and accepted all of the conditions stated on the cruise ticket contract with authority and on behalf of the following guests . . . Thomas Francescangeli, Denise Irwin.

(Doc. No. 6 at 13.) Although the Cruise Ticket Contract is a separate document from the Xpress pass, the Contract contains a forum selection clause requiring that any action commenced against Defendants in federal court must be filed in the United States District Court for the Southern District of Florida. (Doc. No. 14 at 15.)

On February 4, 2012, the first day of the cruise, Plaintiff slipped in a puddle of water on the deck of the cruise ship, the Celebrity Summit, and was injured. (Doc. No. 1 at 4.) Plaintiff alleges that her injuries were caused by Defendants' negligence. (Doc. No. 1 at 8.)

On August 2, 2012, Plaintiff filed the Complaint in this Court against Defendants for negligence. (Doc. No. 1 at 1.) On September 9, 2012, Defendants moved to dismiss the Complaint, arguing that this case is improperly venued in the United States District Court for the Eastern District of Pennsylvania because the forum selection clause is enforceable. (Doc. No. 2 at 6.) In the alternative, Defendants seek the transfer of this case to the United States District Court for the Southern District of Florida. (Id.)

Plaintiff argues to the contrary, contending that she was never provided a copy of the Cruise Ticket Contract, and therefore could not assent to the forum selection clause because she was not on notice of its terms. (Doc. No. 13 at 2.) She argues that Defendants have not produced a signed Cruise Ticket Contract, only a signed Xpress pass, which does not list the contract's terms. (Id.) Finally, she contends that she signed the Xpress Pass under duress, contending that "[s]he was given no choice; sign the Xpress pass [before boarding] or don't get on the ship." (Doc. No. 6 at 13.) Plaintiff's arguments are not persuasive, and for reasons that follow, the Court will grant the Motion to Transfer Venue and deny the Motion to Dismiss the Complaint.

II.   **FACTUAL BACKGROUND**

Plaintiff Denise Irwin is a resident of Pennsylvania. (Doc. No. 1 at 5.) Defendants are corporations organized under the laws of Florida, with their principal place of business at 1050

Caribbean Way, Miami, Florida 33132.[1]  (Id. at 6–7.)  As noted, at some point, Plaintiff purchased a ticket through a travel agent to take a cruise on a ship operated by Defendants. (Doc. No. 5 at 3.)

Similar to the requirements for airline travel, Plaintiff was required to display a boarding pass to employees of the cruise line in order to board the vessel.  The boarding pass is called an "Xpress pass."  Prior to February 4, 2012, the first day of the cruise, Plaintiff flew to Puerto Rico and "printed out the Xpress pass before getting on the ship."[2]  (Doc. No. 13 at 5.)  The Xpress pass contained the "Cruise Ticket Contract" provision set forth above.  Plaintiff signed the Xpress pass below the "Cruise Ticket Contract" provision.

The Cruise Ticket Contract contains the following notice on the first page of the agreement:

> **IMPORTANT NOTICE TO GUESTS**
>
> **YOUR CRUISE/CRUISETOUR TICKET CONTRACT CONTAINS IMPORTANT LIMITATIONS ON THE RIGHTS OF PASSENGERS.  IT IS IMPORTANT THAT YOU READ ALL TERMS OF THIS CONTRACT, PAYING PARTICULAR ATTENTION TO SECTION 3 AND SECTIONS 9 THROUGH 11, WHICH LIMIT OUR LIABILITY AND YOUR RIGHT TO SUE, AND RETAIN IT FOR FUTURE REFERENCE.**

(Doc. No. 14 at 12.)

Paragraph 9(a) of the same Cruise Ticket Contract provides:

> 9. **FORUM SELECTION CLAUSE FOR ALL LAWSUITS; CLASS ACTION WAIVER**
>
> a) EXCEPT AS PROVIDED IN SECTION 10(b) WITH REGARD TO BINDING ARBITRATION, IT IS AGREED BY AND BETWEEN PASSENGER AND CARRIER THAT ALL DISPUTES AND MATTER WHATSOEVER ARISING UNDER, IN CONNECTION WITH OR INCIDENT TO THIS AGREEMENT,

---

[1] Although Defendants are listed on the docket as separate parties, they share the same business address and operate as part of Celebrity and Royal Caribbean cruise lines.  (Doc. No. 1 at 2.)

[2] Plaintiff later denied printing the Xpress Pass.  (Doc. No. 14 at 21.)

>PASSENGER'S CRUISE, CRUISETOUR, RCT LAND TOUR OR TRANSPORT, SHALL BE LITIGATED, IF AT ALL, IN AND BEFORE THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA LOCATED IN MIAMI-DADE COUNTY, FLORIDA, U.S.A., (OR AS TO THOSE LAWSUITS TO WHICH THE FEDERAL COURTS OF THE UNITED STATES LACK JURISDICTION, BEFORE A COURT LOCATED IN MIAMI-DADE COUNTY, FLORIDA, U.S.A.) TO THE EXCLUSION OF THE COURTS OF ANY OTHER STATE, TERRITORY OR COUNTRY. PASSENGER HEREBY CONSENTS TO JURISDICTION AND WAIVES ANY VENUE OR OTHER OBJECTION THAT HE MAY HAVE TO ANY SUCH ACTION OR PROCEEDING BEING BROUGHT IN THE APPLICABLE COURT LOCATED IN MIAMI-DADE COUNTY, FLORIDA.

(Doc. No. 14 at 15.) The dispute between the parties concerns these provisions and whether proper notice of their terms was given by Defendants.

### III.  ANALYSIS

#### A.  Enforceability of Forum Selection Clause

Defendants ask the Court to transfer this matter to the United States District Court for the Southern District of Florida. A district court may transfer a case pursuant to 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice" to "any other district or division where it might have been brought or to any district or division to which all parties have consented."

A forum selection clause can be a term of a contract and agreed to by the parties. The clause is valid if there has "been no 'fraud, influence, or overweening bargaining power.'" Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 1995) (quoting Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972)). A valid forum selection clause "is treated as a manifestation of the parties' preferences as to a convenient forum. . . . Thus, while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." Id. A party contesting enforcement of a forum selection provision bears the heavy burden of demonstrating that enforcement would be

4

unreasonable. Bremen, 407 U.S. at 15. To be enforceable, the clause must be "reasonably communicated" to the passenger to ensure that she received sufficient notice of the contractual conditions. Marek v. Marpan Two, Inc., 817 F.2d 242, 245 (3d Cir. 1987).

The essential issue under the reasonable communication standard is whether the passenger has sufficient notice of the clause prior to boarding the ship. Hodes v. S.N.C. Achille Lauro ed Altri-Gestione, 858 F.2d 905, 911 (3d Cir. 1988), overruled on other grounds by Lauro Lines s.r.l. v. Chasser, 490 U.S. 495 (1989). When a court evaluates notice, "the issue is not the timing but rather the communication of the forum selection clause in the ticket." Hicks v. Carnival Cruise Lines, Inc., No. 93-5427, 1994 U.S. Dist. LEXIS 10194, at *12 (E.D. Pa. 1994). Two points are considered in determining whether reasonable communication has been given:

> One focal point is the adequacy of so-called "warning language," often found on the front cover of a cruise ticket, directing a passenger to read the particular terms inside the ticket. The other focal point is the ticket terms themselves, and concerns such physical characteristics as the location of the terms within the ticket, the size of the typeface in which they are printed, and the simplicity of the language they employ.

Marek, 817 F.2d at 245.

Here, the forum selection clause was reasonably communicated to Plaintiff. The warning language at the top of the first page in the Cruise Ticket Contract alerts the buyer to the limitations contained in the contract that could affect the rights of passengers:

> **IMPORTANT NOTICE TO GUESTS**
>
> **YOUR CRUISE/CRUISETOUR TICKET CONTRACT CONTAINS IMPORTANT LIMITATIONS ON THE RIGHTS OF PASSENGERS. IT IS IMPORTANT THAT YOU READ ALL TERMS OF THIS CONTRACT, PAYING PARTICULAR ATTENTION TO SECTION 3 AND SECTIONS 9 THROUGH 11, WHICH LIMIT OUR LIABILITY AND YOUR RIGHT TO SUE, AND RETAIN IT FOR FUTURE REFERENCE.**

(Doc. No. 14 at 12.) The language directs the buyer to Section 9, which contains the forum selection clause. The first line of Section 9 is printed conspicuously in bold typeface and in

capital letters: "9. **FORUM SELECTION CLAUSE FOR ALL LAWSUITS; CLASS ACTION WAIVER**." (Doc. No. 14. at 15.) As seen above, the language in the body of the section is printed in capital letters and contains the agreement between passenger and carrier that all disputes and matters whatsoever arising under or in connection with the agreement shall be litigated in the Southern District of Florida. The terms of Section 9, in conjunction with the warning language at the top of the contract directing the reader to Section 9, meet the standard of reasonable communication set forth in Hodes, Marek, and Hicks.

Moreover, Plaintiff had notice of the forum selection clause in the Cruise Ticket Contract. A passenger is charged with constructive notice of the terms of the ticket provisions if she uses an agent to acquire the ticket. Hodes, 858 F.2d at 912; see Hicks, 1994 U.S. Dist. LEXIS 10194, at *12 n.11 (noting that "[c]onstructive possession through the agent who arranges the trip suffices as receipt of the ticket by the passenger").

Here, Plaintiff had constructive notice of the terms of the Cruise Ticket Contract because she admits that she purchased her ticket through a travel agent. (Doc. No. 5 at 3.) Despite Plaintiff's argument that the contract was not communicated to her because she did not physically have it, the law charges a passenger with notice of the contract terms when the ticket is obtained through a travel agent. Actual notice is not necessary for the terms to be reasonably communicated. Hicks, 1994 U.S. Dist. LEXIS 10194, at *13 n.11.

Nevertheless, Plaintiff was also on actual notice of the terms of the forum selection clause. Plaintiff printed the Xpress pass before she boarded the ship. (Doc. No. 13 at 5) ("Plaintiff flew to Puerto Rico and printed out the Xpress pass online before getting on the ship."). She then acknowledged that she read the terms and conditions of the Cruise Ticket Contract by signing the Xpress pass below the following paragraph:

> **Cruise Ticket Contract**
> I, Denise Irwin certify that I am over 18 years of age, and that during the online check-in-process, I read and accepted all of the conditions stated on the cruise ticket contract with authority and on behalf of the following guests . . . Thomas Francescangeli, Denise Irwin.

(Id. at 24.)  Thus, in addition to having constructive notice of the terms of the Cruise Ticket Contract, Plaintiff also had actual notice by certifying during the online check-in process that she read the terms and conditions of the contract.  Both the warning language and the physical characteristics of the ticket clearly set out the contractual limitations.  The forum selection clause was therefore reasonably communicated, and Plaintiff was on notice of its terms and agreed to them.

In attempting to overcome the fact that the clause was reasonably communicated to her, Plaintiff apparently relies on duress, stating that "[s]he was given no choice; sign the Xpress pass or don't get on the ship." (Doc. No. 6 at 13.)  This argument is based on the disparity in bargaining power.  However, in response to a request for admissions, Plaintiff was asked to make the following admissions and gave the following responses:

> [Request for Admission:] Plaintiff Denise Irwin . . . utilized the Celebrity Cruises' internet check-in website prior to boarding the CELEBRITY SUMMIT for their scheduled February 4, 2012.
>
> [Response:] Admitted.
> . . . .
> [Request for Admission:] At the completion of the online check-in process, plaintiff Denise Irwin . . . printed out an "XPRESS PASS" boarding pass for Denise Irwin's scheduled February 4, 2012 cruise on the CELEBRITY SUMMIT.
>
> [Response:] Denied.  Irwin signed the express pass while on board the ship.  Irwin never printed anything.

(Doc. No. 14 at 20–21.)  Plaintiff's second response contradicts her own Memorandum of Law in Opposition to the Motion, where Plaintiff states that she "flew to Puerto Rico and printed out the XPRESS pass online before getting on the ship." (Doc. No. 13 at 5.)

Regardless, Plaintiff's contention is not persuasive. Her argument overlooks the fact that she was on constructive notice of the forum selection clause because she booked her ticket through an agent. Plaintiff had constructive notice of the terms of the Cruise Ticket Contract well before she flew to Puerto Rico and boarded the ship. She could have declined to sign the contract, but chose instead to accept the terms by signing it. Thus, her duress argument is without merit.

Plaintiff also argues that Defendants have not produced a signed Cruise Ticket Contract and that she never received one. Her signature on the Xpress pass certifying that she read and accepted the terms of the Cruise Ticket Contract overcomes these arguments. Her signature is on the Xpress pass, and no further signature is required on the Cruise Ticket Contract.

**B.   Fairness**

If a forum selection clause is valid, it "is treated as a manifestation of the parties' preferences as to a convenient forum," and the plaintiff has "the burden of demonstrating why they should not be bound by their contractual choice of forum." Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 1995). A moving party seeking to transfer a case bears the burden of establishing that: (1) venue is proper in the transferee forum, (2) transfer is more convenient for the parties and witnesses, and (3) transfer would be in the interest of justice. Lehr v. Stryker, No. 09-2989, 2010 WL 3069633, at *3 (E.D. Pa. Aug. 4, 2010).

While there is ordinarily a strong presumption in favor of a plaintiff's choice of forum, a court has "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." Jumara, 55 F.3d at 883. Therefore, the burden is on the moving party to show that "all relevant things considered, the

case would be better off transferred to another district." In re United States, 273 F.3d 380, 388 (3d Cir. 2001) (internal quotations and citation omitted).

In Jumara, the Third Circuit set forth "private interest" and "public interest" factors that a district court may consider in deciding a motion to transfer. 55 F.3d at 879–80. First, the "private interests" established in Jumara include:

> [P]laintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. at 879 (internal citations omitted). Second, the "public interests" discussed in Jumara include:

> [T]he enforceability of the judgment, practical considerations that could make the trial easy, expeditious or inexpensive, the relative administrative difficulty in the two fora resulting from the court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879–80 (internal citations omitted).

Regarding the first and second "private interest" factors, in accordance with Section 9 of the Cruise Ticket Contract, the parties agreed to litigate any dispute in the United States District Court for the Southern District of Florida. Despite Plaintiff's decision to file suit in her home district, the parties did agree to the choice of forum in the original contract.

The balance of the "private interest" factors weigh in favor of transfer. Although the transferee forum would be less convenient for Plaintiff and her medical witnesses, the location of other potential witnesses, such as employees of Defendants, would make the Southern District of Florida a more convenient choice of forum. Moreover, apart from Plaintiff and her medical witnesses, any witnesses located outside of the Southern District of Florida could just as easily

travel to the selected forum as they could travel to the Eastern District of Pennsylvania. Further, documentation of the events that occurred on the vessel are located in the Southern District of Florida, where Defendants' principal place of business is located.

This Court has also considered the "public" <u>Jumara</u> factors. While many public factors are neutral as to whether this case should be transferred, some factors weigh in favor of transfer. As for the local interest, the Southern District of Florida has a greater interest in deciding this case since most of the physical evidence is located there. Defendants also operate their business in that District. Moreover, given the number of cases involving injuries incurred aboard cruise ships litigated in the Southern District of Florida, that District has a measure of familiarity with these kinds of cases that the Eastern District of Pennsylvania does not have. Finally, it is easier to enforce a potential judgment against Defendants in the Southern District of Florida.

Accordingly, after weighing the above factors, it is apparent that the Motion to Transfer should be granted. Under all the circumstances, Plaintiff has not met her burden of demonstrating that enforcement of the forum selection clause would be unreasonable. Since the Court is granting the Motion to Transfer, the Motion to Dismiss the Complaint will be denied.

**IV.   CONCLUSION**

Defendants' Motion to Transfer Venue will be granted. This case will be transferred to the United States District Court for the Southern District of Florida. The Motion to Dismiss will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE IRWIN,<br><br>                Plaintiff,<br><br>v.<br><br>CELEBRITY CRUISES, INC., et al.,<br><br>                Defendants. | CIVIL ACTION<br>NO. 12-4385 |

## ORDER

**AND NOW**, this 2nd day of April 2013, upon consideration of Defendants' Motion to Dismiss for Improper Venue and/or Transfer Venue (Doc. No. 2), Plaintiff's Response in Opposition (Doc. No. 5), Defendants' Reply in Further Support (Doc. No. 6), the arguments of counsel at a hearing held on October 25, 2012, the Supplemental Briefs filed by Plaintiff (Doc. No. 13) and Defendants (Doc. No. 14), and the arguments of counsel at a second hearing held on January 31, 2013, and in accordance with the Opinion of the Court issued this day, it is **ORDERED** as follows:

1. Defendants' Motion to Transfer Venue (Doc. No. 2) is **GRANTED**. The Motion to Dismiss (Doc. No. 2) is **DENIED**.

2. The Clerk of Court shall transfer this case to the United States District Court for the Southern District of Florida.

3. Any outstanding motions are **DENIED AS MOOT**.

4. The Clerk of Court shall close this case for statistical purposes.

                                                                                   BY THE COURT:

                                                                                   /s/ Joel H. Slomsky
                                                                                   JOEL H. SLOMSKY, J.